**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ANN M. WALLS PLAINTIFF

v. 4:09CV00734 JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration DEFENDANT

**MEMORANDUM AND ORDER**

## I. Introduction

Plaintiff, Ann M. Walls, has appealed the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI). Both parties have submitted Appeal Briefs (docket entries #10 and #17), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleges that obesity, heart problems, and breathing problems were her disabling conditions. (Tr. 80). After her claims were denied at the initial and reconsideration levels, she requested a hearing before an Administrative Law Judge ("ALJ").

On February 13, 2007, the ALJ conducted an administrative hearing. (Tr. 1010-50). Plaintiff and a vocational expert testified. At the time of the hearing, Plaintiff was 40-years old, had a high school education, and had degrees in nursing. (Tr. 1015, 1017). Her past relevant work included jobs as a licensed practical nurse, registered nurse, nurse supervisor, and customer service/receptionist. (Tr. 27, 81-82, 119-23, 1025-27).

The ALJ considered Plaintiff's impairments by way of the familiar five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(I) (2005), §416.920. If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.*, § 404.1520(b), § 416.920.

Step 2 involves a determination, based solely on the medical evidence, of

whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination of impairments which significantly limits the claimant's ability to perform basic work activities. *Id.*, § 404.1520(4)(ii), § 416.920. If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920. If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(4)(iv), § 416.920. If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

In his July 16, 2007 decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date (Tr. 21); (2) had "severe" impairments consisting of obesity, obstructive sleep apnea, history of hypertension, history of diabetes mellitus, depressive disorder (not otherwise specified) and possible pseudotumor cerebi[2] (Tr. 22); (3) did not have an impairment or combination of

[2]Although the ALJ's opinion stated "pseudotremor," that was a scrivener's error.

Pseudotumor cerebi is most common in obese young women, and causes increased intracranial pressure for no obvious reason. The increased intracranial pressure associated with pseudotumor cerebri can cause swelling of the optic nerve

impairments that met a Listing (*id.*); (4) was not entirely credible in her allegations concerning the intensity, persistence and limiting effects of her symptoms (Tr. 26); (5) retained the residual functional capacity for a limited range of sedentary work (Tr. 22); (6) was unable to perform any of her past relevant work (Tr. 27); but (7) was able to preform other jobs which existed in substantial numbers in the national economy, for instance, data entry keyer, semi-conductor/electronics assembler and production worker. (Tr. 28). Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 29).

While this case was pending before the Appeals Council, Plaintiff filed another application for benefits, alleging disability since July 17, 2007 (the day after the ALJ's decision in this case). (Tr. 288). On May 26, 2009, a different ALJ found that she was disabled as of July 17, 2007.[3] (Tr. 288-94).

On July 23, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 8-10). Plaintiff then filed her Complaint initiating this appeal. (Docket entry #2).

## II. Discussion

---

and result in vision loss. *PDR Medical Dictionary* 1593 (3d ed. 2006).

[3]This ALJ found that Plaintiff had severe impairments consisting of: obesity, diabetes mellitus, hypertension, pseudotumor cerebi, sleep apnea, and depression. (Tr. 290). The ALJ found that Plaintiff had the RFC to perform sedentary work, except that she could "only tolerate noncomplex, simple instructions; she can only perform tasks that require little judgment, which can be learned by rote, routine, and repetition; she can handle no more than superficial contact incidental to work with the public and coworkers; she must have supervision which is simple, concrete, direct; she will not be able to maintain a competitive pace for about 1/3 of the day, week, or month; must elevate feet at least 2 to 3 times per day." (Tr. 291).

In her Appeal Brief, Plaintiff argues that the ALJ erred: (1) in assessing the severity and resulting limitations of her depression; (2) in assessing the severity and resulting limitations of her pseudotumor cerebi; (3) in finding that she did not have pedal edema; (4) in rejecting her treating physician's opinion, without adequately developing the record, and in failing to develop the record regarding the objective basis for her shortness of breath; and (5) in failing to comply with Social Security Ruling 02-1p regarding the evaluation of her obesity. For the reasons discussed below, the Court concludes that each of Plaintiff's arguments is without merit.

First, Plaintiff argues sufficient evidence did not support the ALJ's assessment of the severity and resulting limitations of her depression.[4] (Pltf's App. Br. at 35-

[4]In support of her argument, Plaintiff cites to evidence that was generated both before the date of the ALJ's decision and after it was issued. Thus, this latter evidence was submitted to and considered by only the Appeals Council. Unlike most cases, where evidence submitted only to the Appeals Council is clearly identified, it is difficult to tell in this case. However, for purposes of this appeal, that distinction is unimportant:

> [t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b).
>
> The newly submitted evidence is to become part of what we will loosely describe here as the "administrative record," even though the evidence was not originally included in the ALJ's record. *Browning v. Sullivan*, 958 F.2d 817, 823 n. 4 (8th Cir. 1992). If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material. *See Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir. 1990). If, as here, the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial

37). The ALJ addressed Plaintiff's depression during the relevant time period, *i.e.*, up to the time of her opinion:

> A Crisis Intervention Assessment was completed in December 2006 after claimant verbalized suicidal ideations without intent or plan. She expressed angry thoughts regarding her children and reported depression because she was unable to work due to her physical ailments. The diagnosis was depressive disorder, not otherwise specified. (Exh. 8F/5-7). Claimant refused inpatient services. (Exh. 8F/2).
>
> There is no evidence demonstrating consistent complaints or ongoing treatment for symptoms of depression. She refused formal mental health treatment and is not maintained on psychoactive medication. In giving maximum consideration to the degree of depressive complaints indicated, the undersigned finds that claimant can perform routine tasks without impairment and would need little supervision for non-routine work. She can exercise judgment within limits and appropriately maintain superficial contact with the general public. She is capable of learning tasks through experience and can handle some variability in work tasks. The claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

(Tr. 24).

Plaintiff points to significant treatment for depression *after* the relevant time period, but *not* for the time period that is at issue in this case. (Pltf's App. Br. at 14-33, 37). Thus, *during the relevant time period*, the Court concludes that the ALJ properly addressed Plaintiff's depression and the resulting limitations.

---

> evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning*, 958 F.2d at 823.

*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)(footnote omitted).

Second, Plaintiff argues that there was not sufficient evidence to support the ALJ's assessment of the severity and resulting limitations of her pseudotumor cerebi and headaches. (Pltf's. App. Br. at 37-40). However, Plaintiff did not allege that she was limited in her ability to work by headaches. (Tr. 80). There were scattered reports of headache, but, during the relevant time, there was no documented studies or test results diagnosing pseudotumor cerebi. Rather, pseudotumor cerebi was only a provisional diagnosis or a possibility that needed to be ruled out. (Tr. 236, 240, 249, 250). A lumbar puncture procedure and an MRI of her brain were requested in January of 2007 to determine if that provisional diagnosis was correct. (Tr. 236, 240, 249, 250). There is no evidence that such testing had been done by the time of the ALJ's decision. The ALJ did not discount the fact that Plaintiff suffered headaches, she merely questioned the source. (Tr. 26). She found as a "severe" impairment "possible" pseudotumor cerebi, which is all that the evidence before her justified. Under these circumstances, the Court concludes that the evidence available to the ALJ supported her assessment of Plaintiff's headaches during the relevant time period.

Third, Plaintiff argues that the ALJ erred in concluding that she did not have pedal edema. (Pltf's App. Br. at 40). Assuming that Plaintiff is correct, her point is moot. The ALJ acknowledged Plaintiff's testimony that her worst problem was her legs. (Tr. 28). Her residual functional capacity accommodated restrictions in standing, walking and sitting. (Tr. 22). It also included a restriction against driving and included the need to periodically elevate her legs to a height no higher than her waist. *Id.* Thus, the Court concludes that the ALJ's error, if any, was harmless. *See*

*Arkansas v. Oklahoma*, 503 U.S. 91, 109 n.13 (1992) (immaterial flaw by ALJ will not justify remand); *Hensley v. Barnhart*, 352 F.3d 352, 357 (8th Cir. 2003) (ALJ's incorrect determination of claimant's literacy harmless error where result was same when correct Medical-Vocational Guidelines rule was applied).

Fourth, Plaintiff contends that the ALJ erred in rejecting the treating physician's opinion, without adequately developing the record, and in failing to develop the record regarding the objective basis for her shortness of breath. (Pltf's App. Br. at 42-45). On October 20, 2005, Plaintiff saw Dr. B. Brooks Lawrence. In pertinent part, his clinic note reads as follows:

> **SUBJECTIVE:**
> Chief complaint: 1 month follow-up shortness of breath. Blood pressure up/down.
> She is feeling somewhat better. She is losing weight. She is watching what she eats. She still [is] short of breath on exertion but seems to be improving. Her blood pressure has been up and down.
>
> **OBJECTIVE:**
> VS: BP: 142/098. W: 351 lbs. 00.0 oz.
> Morbidly obese, black female in no acute distress. Heart normal Lungs - clear to auscultation, no crackles or wheezes, good air movement. BJE - no clubbing or cyanosis positive edema, FROM,[full range of motion] 5/5 strength diffusely.
>
> **ASSESSMENT:**
> Asthma (airway constrictions) #493.90.
> Hypertension #401.9.
> Obesity (over-weight) #278.00.
>
> **PLAN:**
> We had a long discussion on continuing to lose weight and encouragement on trying to eat her right things. Again we talked about the possibility of a gastric bypass.
> *Currently I feel she is disabled secondary to her weight and difficulty with breathing because of her weight.*

> **FOLLOW UP:**
> She is to follow-up with me in three months for recheck on her weight and breathing.

(Tr. 185) (emphasis added). The emphasized sentence is the treating physician's opinion that Plaintiff believes the ALJ should have given greater weight.

Plaintiff alleged that her onset of disability was September 16, 2005. (Tr. 19). According to the record, she first saw Dr. Lawrence on September 7, 2005. (Tr. 153). She had seen him on two other occasions prior to October 20, 2005, the date he opined that she was disabled. (Tr. 154-55). Thus, at that time, it is questionable whether Dr. Lawrwence qualified as a "treating physician." *See Randolph v. Barnhart,* 386 F.3d 835, 840 (8th Cir. 2004) (doctor had only met with patient on three occasions when she filled out checklist). "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i) (2006). In addition, his opinion that she was "disabled" was not a medical opinion, but an opinion on the application of a statute, a task assigned solely to the discretion of the Commissioner. *Krogmeier v. Barnhart,* 294 F.3d 1019, 1023 (8th Cir. 2002); *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997). As noted in Social Security Ruling 96-5p, at 5:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even

> when offered by a treating source, they can never be entitled to controlling weight or given special significance.

A treating physician's opinions are not conclusive in determining disability status, and must be supported by medically acceptable clinical or diagnostic data. *Wilson v. Chater*, 76 F.2d 238, 241 (8th Cir. 1996); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). *See Krogmeier v, Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)(treating physician's opinion entitled to controlling weight if well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record). This is particularly true when, at the time the physician forms his opinion, he has only seen the patient three times during the previous sixty days.

The second part of this argument rests on the premise that the ALJ somehow had a duty to develop the record regarding the objective basis for Plaintiff's shortness of breath. Proof of a disabling impairment must be supported by at least some objective medical evidence. *Marolf v. Sullivan*, 981 F.2d 976, 978 (8th Cir. 1992); *Simuel v. Apfel*, 21 F.Supp.2d 941, 943 (E.D. Ark. 1998). It is Plaintiff's burden to establish her disability, not the ALJ's.

If a claimant is unable to show that she has a medically severe impairment, she is not eligible for disability benefits. *Bowen v. Yuckert*, 482 U.S. at 148. It is not unreasonable to require a claimant, who is in a better position to provide information about her own medical condition, to do so. *Id.* at 146 n.5. In this case, there appears to be no question that Plaintiff had breathing difficulties. The ALJ recognized that fact, and incorporated appropriate restrictions to account for them in arriving at

Plaintiff's RFC:

> Due to shortness of breath the claimant cannot climb scaffolds/ladders/ropes and can only occasionally climb stairs/ramps, stoop, bend, crouch, crawl, kneel, and balance. In addition, the claimant cannot work at unprotected heights or around dangerous equipment or machines, cannot work around extreme cold/heat/wet, and must avoid concentrated exposure to dust/fumes/smoke/chemicals/noxious gases.

(Tr. 22).

> Activities at the sedentary range cannot reasonably be expected to exacerbate chest pain or produce shortness of breath.
>
> Claimant is further limited by her combination of impairments in that climbing ladders, ropes and scaffolds should be entirely avoided. . . . . Although use of a CPAP device is shown to successfully decrease the effects of claimant's sleep apnea, she should avoid driving, working at heights and working with dangerous machinery due to the increased risks imposed [by] episodic fatigue. In giving claimant's allegations of shortness of breath maximum consideration, the undersigned further finds that work environments should not involve exposure to extremes of temperature, concentrated fumes, smoke or noxious gases.

(Tr. 23). Thus, the Court concludes that the second aspect of Plaintiff's fourth argument for reversal also lacks merit.

Finally, Plaintiff contends that the ALJ erred by failing to comply with Social Security Ruling (SSR) 02-1p regarding the evaluation of her obesity. (Pltf's App. Br. at 45-46). The Ruling in question does not mandate any special procedures for evaluating obesity. It merely reminds adjudicators to consider the effects of obesity, both alone and in combination with other impairments. A fair reading of the ALJ's opinion reveals that she did just that. (Tr. 23-24, 26-27). She found that obesity was a "severe" impairment. (Tr. 22). This means that, alone or in combination with other impairments, Plaintiff's obesity significantly limited her physical or mental ability to

perform basic work activities. SSR 02-1p, 4. A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. §§ 404.1520(c), 416.920(c) (2006). It has "more than a minimal effect on the claimant's ability to work." *Hudson v. Bowen*, 870 F.2d 1392, 1396 (8th Cir. 1989); *accord*, *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). The Court concludes the ALJ properly considered Plaintiff's obesity, both under SSR 02-1p and otherwise.

**III. Conclusion**

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996), superceded by statute on other grounds; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is

hereby affirmed and Plaintiff's Complaint is hereby dismissed, with prejudice.

DATED this 29th day of March, 2011.

J. Thomas Ray
UNITED STATES MAGISTRATE JUDGE